UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES PHILIP DOUGLAS,

    Plaintiff,

  v.

DENNIS CHERRY, et al.,

    Defendants.

CASE NO. 3:14-CV-05507-BHS-DWC

REPORT AND
RECOMMENDATION

NOTING DATE: JULY 3, 2015

  The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. 23.

  The Court concludes Plaintiff failed to sufficiently rebut Defendants' motion for summary judgment regarding his Eighth Amendment claims. Further, Plaintiff has failed to state a claim upon which relief can be granted regarding his due process and retaliation claims, and his claims arising from actions occurring outside Stafford Creek Corrections Center. Plaintiff also failed to allege several Defendants were personally involved in the alleged denial of his constitutional rights. Accordingly, the Court recommends granting Defendants' Motion for Summary Judgment and dismissing Plaintiff's claims.

**BACKGROUND**

In his Amended Complaint[1], Plaintiff, an inmate confined at Stafford Creek Corrections Center ("SCCC"), alleges his Eighth Amendment rights were violated when (1) Defendant Patricia McCarty, a correctional unit sergeant, failed to protect Plaintiff from an inmate attack; and (2) Defendants Luis Figueroa, a physician's assistant, and Wayne Judge, a registered nurse, provided Plaintiff with inadequate medical care. Dkt. 7. Plaintiff also alleges Defendant Stella Jennings violated his due process rights during a disciplinary hearing because his good time credits were taken away without "advisors or staff witness statements." *Id.* Finally, Plaintiff maintains unnamed SCCC officials retaliated against him, violating his First Amendment rights. *Id.*

Defendants filed the pending Motion for Summary Judgment on March 19, 2015. Dkt. 23. Plaintiff filed his Response on April 13, 2015, and Defendants filed their Reply on April 14, 2015. Dkts. 26, 27. In support of their Motion for Summary Judgment, Defendants submitted affidavits from Defendants Schaller, Cherry, and McCarty and portions of Plaintiff's medical and prison records. Dkts. 23-1, 23-2. Plaintiff has submitted his Amended Complaint and his Response to Defendants' Motion for Summary Judgment--both signed under penalty of perjury-- and copies of grievances and kites submitted to prison officials. Dkts. 7, 26.[2]

---

[1] Plaintiff was ordered to file an Amended Complaint as his original Complaint failed to state a claim. Dkt. 6. The Amended Complaint acts "as a complete substitute for the original and not as a supplement." *Id.* at p. 4.

[2] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

1

**STANDARD OF REVIEW**

2      Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

3 summary judgment if the movant shows that there is no genuine dispute as to any material fact

4 and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

5 is genuinely disputed must support the assertion by:

6           (A) citing to particular parts of materials in the record, including
            depositions, documents, electronically stored information, affidavits
7           or declarations, stipulations (including those made for purposes of
            the motion only), admissions, interrogatory answers, or other
8           materials; or
            (B) showing that the materials cited do not establish the absence or
9           presence of a genuine dispute, or that an adverse party cannot
            produce admissible evidence to support the fact.

10 Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in

11 the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th

12 Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v.*

13 *County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

14      As the party moving for summary judgment, Defendants have the initial burden to

15 demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477

16 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir.

17 2010). The movant "always bears the initial responsibility of informing the district court of the

18 basis for its motion," and identifying those portions of the record, including pleadings, discovery

19 materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of

20 material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a

21 genuine issue of material fact exists does not preclude summary judgment. *California*

22 *Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

23 Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and

24

1  whose existence might affect the outcome of the suit," and the materiality of which is

2  "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific*

3  *Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

4  　　　Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

5  grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

6  'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477

7  U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

8  longer can it be argued that any disagreement about a material issue of fact precludes the use of

9  summary judgment."). In other words, the purpose of summary judgment "is not to replace

10  conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

11  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

12  support an assertion of fact or fails to properly address another party's assertion of fact as

13  required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

14  materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

15  Fed R. Civ. P. 56(e)(3).

16  　　　　　　　　　　　　　　　**DISCUSSION**

17  　　　Plaintiff alleges the following claims in his Amended Complaint: (A) Defendant McCarty

18  failed to protect him from an inmate assault; (B) Defendants Figueroa and Judge were

19  deliberately indifferent to Plaintiff's serious medical needs; (C) Defendant Jennings violated

20  Plaintiff's due process rights during a disciplinary hearing; (D) Defendants retaliated against

21  Plaintiff for pursuing his claim; and (E) Other Defendants. Dkt. 7.

22  　　　*A. Failure to Protect*

23  　　　Plaintiff alleges Defendant McCarty failed to protect Plaintiff from an inmate attack after

24  informing Defendant McCarty he was being harassed by gang members. Dkt. 7, pp. 4-5. The

Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners. *Id.* at 833. However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834.

In cases alleging an Eighth Amendment violation based on a failure to prevent harm, the plaintiff must first meet an objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). The plaintiff must also meet a subjective component by showing the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

The evidence establishes Plaintiff was involved in an altercation with inmate Hatfield on December 1, 2013. Dkt. 7, p. 5; Dkt. 23-2, Cherry Affidavit, pp. 18-19, ¶ 3. Plaintiff states he informed Defendant McCarty of the harassment two weeks prior to the assault by submitting an "Offender's Kite". Dkt. 7, p. 5. A kite, dated November 24, 2013, shows Plaintiff requested to be

1    moved because "[t]he kid in 27 house keeps wanting to fight me and I don't want to I'm tired of

2    getting harrassed (sic) over on this side" Dkt. 5, p. 6 ("Kite"). But, the Kite was not signed as

3    received by a prison official. *Id.* Plaintiff also states he discussed inmate Hatfield with Defendant

4    McCarty, whom Plaintiff alleges told him to "[d]eal with it yourself, I'm too busy." Dkt. 26, p. 3.

5         Defendant McCarty does "not recall ever receiving a statement from [Plaintiff] regarding

6    a claim that specific individuals were harassing him." Dkt. 23-2, McCarty Affidavit, pp. 29-30, ¶

7    3. Additionally, Defendant McCarty does not recall receiving the Kite from Plaintiff. *Id.* at ¶ 4.

8    She does not have a record of receiving the Kite, and does not believe she ever received the Kite.

9    *Id.*

10        After the December 1, 2013 altercation, Plaintiff was found guilty of fighting and, upon

11   release from administrative segregation, was moved to a separate unit from inmate Hatfield. Dkt.

12   23-2, Cherry Affidavit at ¶ 4. To Correctional Unit Supervisor Defendant Dennis Cherry's

13   knowledge Plaintiff "never requested a spearatee placement from any offender(s) while at

14   SCCC." *Id.* at ¶ 7. After both inmates were placed in administrative segregation, they sent kites

15   stating there was no "bad blood between them" and, to Defendant Cherry's knowledge, there

16   were no further incidents between the two inmates. *Id.* at ¶ 4.

17        While Plaintiff may have raised some factual disputes as to the objective component of

18   his 8th Amendment claim, he has not presented any evidence to satisfy the subjective component

19   of his 8th Amendment claim where he must show Defendants had knowledge of an excessive risk

20   to Plaintiff's safety and disregarded the risk. Specifically, the evidence shows Plaintiff drafted

21   the Kite to Defendant McCarty stating an unnamed inmate wanted to fight Plaintiff. There is no

22   evidence showing Defendant McCarty read, signed, or responded to the Kite. Rather, the

23   evidence shows Defendant McCarty never received the Kite. As the evidence fails to show

24

Defendant McCarty read the Kite, she could not have known of and disregarded an excessive risk to Plaintiff's safety based on the information contained in the Kite. *See Pesina v. Stockwell*, 2012 WL 2395177, *7 (E.D. Wash. June 25, 2012) (finding the defendant did not know of and disregard knowledge of an impending assault when he did not receive kites sent by the plaintiff); *Hards v. Gordon*, 2004 WL 1055664, * 4 (D. Utah May 5, 2004) (granting summary judgment for the defendants when the plaintiff was stabbed by gang members housed next to him because, although the plaintiff gave two kites to guards on duty stating his safety was in danger, there was no evidence the defendants ever read the kites).

Plaintiff also provides a vague statement showing he discussed inmate Hatfield with Defendant McCarty where he states she told him, "Deal with it yourself, I'm too busy." Dkt. 26, p. 3. This one statement does not show Defendant McCarty had knowledge of and disregarded an excessive risk of safety to Plaintiff. There is no information regarding the content of the conversation, what Plaintiff conveyed to Defendant McCarty regarding inmate Hatfield, and when the conversation occurred. This one statement fails to show Defendant McCarty had knowledge of and disregarded an excessive risk of harm to Plaintiff. *See Lujan*, 497 U.S. at 888 (the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *Celotex*, 477 U.S. at 324 (the nonmoving party must go beyond his or her own pleadings and designate "specific facts showing that there is a genuine issue for trial"); *Terry v. Haviland*, 2011 WL 166865, * 5 (E.D. Cal. May 3, 2011) (finding vague and bare assertions that the defendant made a retaliatory statement did not overcome the defendant's motion for summary judgment).

Plaintiff fails to demonstrate Defendant McCarty, or any other Defendant, knew of and disregarded an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 834. As Plaintiff did

1  not provide sufficient evidence to refute Defendants' showing that they were not deliberately

2  indifferent to an excessive risk of harm to Plaintiff, no genuine issue of fact remains regarding

3  Plaintiff's failure to protect claim. Thus, the Court concludes Plaintiff's claim of deliberate

4  indifference to an excessive risk of harm cannot survive Defendants' Motion for Summary

5  Judgment.

6  ### B. Indifference to Medical Needs

7  Plaintiff's Eighth Amendment medical claim arises from the following allegations: (1)

8  Defendants Figueroa and Judge failed to provide Plaintiff with adequate medical care after

9  Plaintiff complained of a concussion and subsequent blackouts and (2) Defendants failed to

10  properly treat his high cholesterol and skin condition. Dkt. 7, p. 4. "Deliberate indifference to

11  serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."

12  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*,

13  503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the

14  seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that

15  need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by*

16  *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc).

17  A medical need is serious "if the failure to treat the prisoner's condition could result in

18  further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

19  F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

20  doctor or patient would find important and worthy of comment or treatment; the presence of a

21  medical condition that significantly affects an individual's daily activities; or the existence of

22  chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for

23  medical treatment." *Id.* at 1059-1060.

24

REPORT AND RECOMMENDATION- 8

1    If a plaintiff shows he suffered from a serious medical need, he must then show the

2    prison officials responded to the serious medical need with deliberate indifference. *See Farmer*,

3    511 U.S. at 834. Deliberate indifference "may appear when prison officials deny, delay or

4    intentionally interfere with medical treatment, or [ ] may be shown by the way in which prison

5    physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988).

6    However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does

7    not violate a prisoner's Eighth Amendment rights." *Id*. Further, mere differences of opinion

8    between a prisoner and prison medical staff or between medical professionals regarding the

9    proper course of treatment does not give rise to a § 1983 claim. *Toguchi v. Chung*, 391 F.3d

10    1051, 1058 (9th Cir. 2004). Deliberate indifference to a prisoner's serious medical need requires

11    "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In

12    other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or

13    possible medical need." *Id*.

14       1.    Evidence of Treatment History

15       The evidence shows Plaintiff arrived at SCCC in August of 2012, and was seen by

16    medical staff on November 6, 2012, for a cholesterol check. Dkt. 23-1, Schaller Affidavit, pp. 2-

17    9, ¶ 11. Plaintiff was prescribed Gemfibrozil, a medication used to treat high cholesterol. *Id.*

18    Plaintiff "also presented with an unbroken skin issue on his scalp, face, back, and chest;"

19    Plaintiff was prescribed Doxycycline and his Hydroxyzine was increased. *Id.* In October of 2013,

20    a prescription for Niacin was entered, replacing the prescription for Gemfibrozil. Plaintiff

21    submitted a kite stating he could not take Niacin because it was too hard on his "face/skin". Dkt.

22    26, p. 5. This kite was received by "P. Young, LPN", and Plaintiff was instructed to sign up for

23    "provider clinic". *Id.*

24

1    Plaintiff was seen by the medical unit again on December 1, 2013, after he was involved

2  in an altercation with another inmate. Dkt. 23-1, Schaller Affidavit at ¶ 12. An incident report

3  indicated Plaintiff had abrasions to his back/shoulder area and the side of his head, multiple

4  scratches on his mid-back, and a small bruise and minor swelling to the back of his head. *Id.* "An

5  assessment indicated [Plaintiff] was alert and oriented, his pupils were equal and reactive, and

6  that he had no gait or memory problems noted." *Id.* at ¶¶ 12, 13. The reports do not indicate

7  Plaintiff suffered a concussion. *Id.* at ¶13. Plaintiff was also seen by a mental health physician on

8  January 17, 2014, and the physician noted Plaintiff "displayed no apparent memory

9  challenges[.]" *Id.* at ¶ 15.

10    Plaintiff was admitted to the inpatient unit at SCCC on March 7, 2014 for chest pains. *Id.*

11  at ¶ 18. The medical records do not indicate Plaintiff complained of a concussion or subsequent

12  blackouts at this time. *Id.* Plaintiff did complain of "'flushing,' a common side effect of Niacin

13  cholesterol medicine." *Id.* "Flushing" is a non-allergic response to the ingestion of Niacin, and

14  refers to a patient's skin blushing red. *Id.* This condition can be somewhat uncomfortable, but it

15  is short-lasting with no long term side effects. *Id.* In response to Plaintiff's complaints, the

16  Niacin was discontinued and a new cholesterol medication was prescribed. *Id.*

17    Plaintiff remained in the medical unit at SCCC through March 10, 2014. *See* Dkt. 23-1,

18  pp. 32-37. He was discharged after his chest pain resolved. *Id.* at p. 35. Plaintiff states Defendant

19  Figueroa could not determine Plaintiff's medical issue, and instructed Plaintiff to avoid exercise.

20  Dkt. 7, p. 5. The medical records show Defendant Figueroa diagnosed Plaintiff with "chest pain

21  probably GI/anxiety" and noted Plaintiff's EKG was normal. Dkt. 23-1, p. 35. Plaintiff was

22  discharged in stable condition, and was instructed to take his medications as prescribed with a

23  note stating his Niacin would be discontinued. *Id.*

24

1        Defendant Figueroa treated Plaintiff again on March 12, 2014, for complaints of a

2  concussion and memory loss. Dkt. 23-1, Schaller Affidavit at ¶ 19. Plaintiff's neurological exam

3  was normal, and Defendant Figueroa diagnosed Plaintiff with "post head trauma syndrome? v.

4  depression." *Id.* Defendant Figueroa "ordered labs and made a mental health referral." *Id.*

5        Medical staff scheduled Plaintiff for a follow-up appointment to take place on March 24,

6  2014; the appointment was rescheduled for March 26, 2014. *Id.*; Dkt. 23-1, 39. Medical records

7  indicate Plaintiff "no-showed for the appointment." Dkt. 23-1, Schaller Affidavit at ¶ 19; Dkt.

8  23-1, 39. Additionally, there is evidence Plaintiff was seen by his unit provider, Defendant

9  Schaller, on March 15 and March 29, 2014, and Plaintiff had his blood drawn on March 19 and

10  April 25, 2014. Dkt. 7, p. 22. The objective evaluations and laboratory results failed to

11  substantiate Plaintiff's claims of blackouts and memory loss. *Id.*

12        On April 9, 2014, Plaintiff was taken to medical after he missed prisoner count and was

13  discovered sitting on a toilet fully clothed. Dkt. 23-1, Schaller Affidavit at ¶ 20. Plaintiff walked

14  in to the medical unit on his own power and reported "[h]aving [a] stroke before." *Id.* "The initial

15  assessment that was done indicated that [Plaintiff] was normal and he passed a neurological

16  exam with no deficits and no sign of stroke." *Id.* Defendant Schaller treated Plaintiff on April 15,

17  2014. *Id.* at ¶ 23. Cholesterol medication was discontinued because Plaintiff was no longer

18  taking the medication. *Id.* Plaintiff also reported memory loss and blackouts. *Id.* "He presented as

19  neurologically intact with no movement or focal neurological issues." *Id.* Defendant Schaller

20  noted his "impression that Plaintiff was feigning his symptoms and malingering." *Id.*

21        On April 29, 2014, Defendant Schaller saw Plaintiff and noted Plaintiff denied any skin

22  rashes. *Id.* at ¶ 25. Defendant Schaller did not see any skin rashes, and did not document seeing

23  any facial scarring. *Id.* Plaintiff reported he "stopped using his hydroxyzine because he thought

24

he may be allergic." *Id.* During the appointment, Plaintiff was fully alert and oriented, and neurologically intact. *Id.* Defendant Schaller treated Plaintiff again on June 3, 2014, for a rash on Plaintiff's face, scalp, and chest. *Id.* at ¶ 27. Plaintiff already had prescriptions for his rash, and Plaintiff stated the coal tar shampoo he had been prescribed "helps". *Id.*

Plaintiff's next communication regarding a need for medical care occurred approximately six weeks later when he submitted a kite on July 12, 2014 complaining of blackouts from the December 2013 fight and Alzheimer's. Dkt. 26, p. 12. Non-party Mike Spencer, Psych Associate, responded to the kite, and told Plaintiff the medical tests show Plaintiff suffered no apparent side effects from the December 2013 incident. *Id.*

2. <u>Defendants' Treatment of Plaintiff's Concussion</u>

Plaintiff alleges Defendants failed to properly treat his concussion and subsequent blackouts. *See* Dkt. 7. Plaintiff states generally the treatment provided by Defendants Figueroa and Judge was inadequate, and Defendant Figueroa "could not figure out the medical issue" in March of 2014. *Id*. at p. 5. Plaintiff provides no evidentiary support or details to show these two Defendants provided inadequate care or acted with deliberate indifference to Plaintiff's serious medical needs.

Following the December 2013 fight, Plaintiff was seen by medical and provided treatment. There is no indication Plaintiff suffered a concussion during the fight. Thereafter, Plaintiff was seen regularly by the prison medical staff. Additional tests showed Plaintiff was neurologically intact and had no memory problems. Further, Defendant Schaller noted it was his "impression that Plaintiff was feigning his symptoms and malingering." Dkt. 23-1, Schaller Affidavit at ¶ 23.

1       The evidence further shows Plaintiff was treated for chest pain in March of 2014, which

2   resolved after three days in the medical unit. Defendant Figueroa diagnosed the chest pain as

3   being likely due to gastrointestinal and anxiety issues. Plaintiff was released after the chest pain

4   resolved. There is no evidence Plaintiff complained of blackouts at this time. Medical records in

5   March and April of 2014 show Plaintiff was seen regularly and was neurologically intact, with

6   no signs of a concussion or blackouts. There is no medical evidence supporting Plaintiff's

7   contention he suffered from a concussion and subsequent blackouts.

8       3.   <u>Defendants' Treatment of Plaintiff's Cholesterol Medication and Skin Condition</u>

9       Plaintiff also alleges he was given the wrong cholesterol medication, which may have

10  exacerbated his condition, and his skin condition was not adequately treated. Dkt. 7. The

11  evidence shows Plaintiff was prescribed Gembfibrozil for high cholesterol. This prescription was

12  changed to Niacin, which caused Plaintiff to experience a non-allergic, harmless reaction called

13  "flushing". When Plaintiff reported his discomfort to medical personnel, the Niacin prescription

14  was discontinued and a new cholesterol medication was prescribed. Further, Plaintiff was seen

15  several times for his reported skin problems, and his rashes were treated with prescription

16  medications, which Plaintiff reported helped. There is no evidence showing Plaintiff suffered

17  from a skin infection while housed at SCCC.

18      In summary, the evidence fails to show Defendants Figueroa or Judge, or the staff at

19  SCCC, acted with deliberate indifference to Plaintiff's medical needs and that his medical needs

20  were serious. Plaintiff was provided with treatment when requested. Further, the medical

21  assessments were normal and the prescribed medications were providing Plaintiff with relief.

22  There is no evidence indicating Defendants should have taken additional action to treat

23  Plaintiff's medical needs or disregarded any serious medical need.

24

1    As Plaintiff did not provide the Court with evidence refuting Defendants' showing that

2    they were not deliberately indifferent to a serious medical need, no genuine issue of fact remains.

3    Accordingly, Plaintiff's claim of deliberate indifference to a serious medical need cannot survive

4    Defendants' Motion for Summary Judgment.

5    **C. Due Process Violation**

6    In his Amended Complaint and Response to Defendants' Motion to Dismiss, Plaintiff

7    alleges Defendant Jennings violated his due process rights by failing to allow him advisors and

8    staff witness statements during a disciplinary hearing. Dkts. 7, p. 3; 26, p. 4. Plaintiff contends

9    this resulted in a loss of good time credits. *Id.*

10   When a prison disciplinary proceeding may result in the loss of good time credits, due

11   process requires the prisoner receive: "(1) advance written notice of the disciplinary charges; (2)

12   an opportunity, when consistent with institutional safety and correctional goals, to call witnesses

13   and present documentary evidence in his defense; and (3) a written statement by the factfinder of

14   the evidence relied on and the reasons for the disciplinary action." *Superintendent,*

15   *Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985). Here,

16   Plaintiff provides nothing more than a vague allegation stating he was denied due process

17   because Defendant Jennings did not provide advisors or staff witness statements during the

18   hearing. Plaintiff has failed to allege facts sufficient to show Defendant Jennings violated his due

19   process rights, and the Court concludes this claim should be dismissed. *See Ashcroft v. Iqbal*,

20   556 U.S. 662, 678 (2009) (the pleading must be more than an "unadorned, the-defendant-

21   unlawfully-harmed-me accusation").

22

23

24

### D.  Retaliation

At the end of his Amended Complaint, Plaintiff states, "I am currently losing all of my points over this as a retalliatory (sic) action by staff here at Stafford Creek and am seeking relief for this as well." Dkt. 7, p. 5. To prove a First Amendment claim of retaliation under § 1983, Plaintiff must show: (1) he was subjected to adverse action; (2) the adverse action was imposed because of certain conduct; (3) the conduct giving rise to the adverse action is legally protected; (4) the adverse action chilled the prisoner's speech; and (5) the adverse action did not advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). In addition, the plaintiff must show retaliation was the substantial or motivating factor behind the conduct of the prison official. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977); *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

Plaintiff failed to allege facts supporting a claim of retaliation. He has not shown he was subjected to an adverse action, which was imposed because of legally protected conduct. Further, he has not alleged his speech has been chilled. Importantly, Plaintiff does not identify a specific individual who retaliated against him. Accordingly, Plaintiff has failed to allege a retaliation claim, and the Court concludes this claim must be dismissed.

### E.  Remaining Defendants and Claims

Plaintiff identified Dennis Cherry, Gregory Schaller, Patrick Glebe, and James Hansen as Defendants in his Amended Complaint. Dkt. 7, p. 3. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in

1  another's affirmative act, or omitting to perform an act which is legally required. *Johnson v.*
2  *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

3      Plaintiff must allege facts showing how a defendant caused or personally participated in
4  causing the harm alleged in the complaint. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988);
5  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Sweeping conclusory allegations against an
6  official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633. A § 1983 suit cannot be
7  based on vicarious liability alone, but must allege the defendant's own conduct violated the
8  plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

9      The Amended Complaint contains no factual allegations regarding any alleged
10  wrongdoing by Defendants Cherry, Schaller, Glebe, or Hansen. As Plaintiff has not alleged any
11  claims against these four Defendants, the Court finds Defendants Cherry, Schaller, Glebe, and
12  Hansen should be dismissed from this action.

13      Plaintiff also identifies several instances of alleged deliberate indifference while he was
14  housed at WSP and Clallum Bay Correctional Center ("CBCC"). Plaintiff has failed to show
15  how any Defendant named in this case was personally involved in any alleged wrongdoing at
16  either WSP or CBCC. Accordingly, Plaintiff has failed to state claims against Defendants
17  regarding the alleged constitutional violations which occurred at WSP and CBCC, and these
18  claims must be dismissed.

19                              **CONCLUSION**

20      Based on the foregoing, the undersigned recommends Defendants' Motion for Summary
21  Judgment be granted and all claims be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R.
22  Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written
23  objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those
24  objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

1   Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the

2   matter for consideration on July 3, 2015, as noted in the caption.

3          Dated this 1st day of June, 2015.

4

5                                                 David W. Christel
                                                  United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION- 17